IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MELINDA O. HAMILTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:13-CV-0038-D |
| VS. | § | |
| | § | |
| WATERS LANDING APARTMENT, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Defendants AVPM Corp. ("AVPM") and Waters Landing Apartment ("Waters Landing") move for summary judgment dismissing plaintiff's claims of race discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 4200e *et seq*., and age discrimination, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*.  The dispositive question presented is whether a reasonable trier of fact could find that defendants' proffered legitimate, nondiscriminatory reason for terminating plaintiff's employment is pretextual.  Concluding that a reasonable trier of fact could not make this finding, the court grants the motion and dismisses this suit with prejudice.

I

Plaintiff Melinda Hamilton ("Hamilton") is an African-American who was 53 years

old during the period pertinent to this lawsuit.[1]  Defendants initially hired Hamilton in April

2010 as an assistant property manager.  In January 2011 she was promoted to be the property

manager of Waters Landing, one of the apartment complexes that AVPM owns.  Laura Eaton

("Eaton") was responsible for hiring Hamilton, and Eaton made the decision to promote her.

In April 2011, however, Eaton recommended that Hamilton not receive a discretionary

performance-based bonus.  Hamilton was the only one of nine property managers who did

not receive this bonus.[2]  According to Eaton, Hamilton sometimes represented to her that

certain apartments were ready to lease, but on her inspection, Eaton found that they were not

ready because of various problems, such as improperly-cleaned carpets.

Eaton was Hamilton's immediate supervisor until May 2011, when Robert Englard

("Englard") replaced Eaton.  Soon after Englard became Hamilton's supervisor, he visited

the Waters Landing apartment complex.  During this visit, he made the comment that all of

the employees on the grounds crew were black.  Either during this visit or another visit

shortly thereafter, Englard inspected an apartment that Hamilton had listed as "ready" on the

---

[1]In deciding this motion, the court views the evidence in the light most favorable to
Hamilton as the summary judgment nonmovant and draws all reasonable inferences in her
favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex.
2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d
698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]Hamilton does not specifically dispute that she failed to receive this particular
discretionary performance-based bonus, but she asserts that she did receive other bonuses.
She does not specify whether the bonuses she received were based in any respect on
performance.

apartment complex's white boards[3] and discovered that the apartment was not, in fact, ready

to be leased.  Englard visited the Waters Landing apartment complex again in June 2011, and

he again discovered that several apartment units that were listed as "ready" needed

substantial work before they could be leased.  Englard decided to terminate Hamilton's

employment, and he informed her of her termination that same month.

Following her discharge, Hamilton filed this lawsuit, alleging race discrimination

under Title VII and age discrimination under the ADEA.  Defendants move for summary

judgment on both claims, contending that Hamilton has failed to adduce sufficient evidence

that would enable a reasonable trier of fact to find that defendants' legitimate,

nondiscriminatory reason for terminating her is pretextual.  Hamilton opposes the motion.

II

Because Hamilton will bear the burden of proof on her claims of race discrimination

and age discrimination, defendants can meet their summary judgment obligation by pointing

the court to the absence of admissible evidence to support the claim in question.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once defendants do so, Hamilton must go

beyond her pleadings and designate specific facts showing that there is a genuine issue for

---

[3]The white boards are two dry erase boards that the apartment complex uses to identify which apartment units are ready to be leased and which need repair work before going on the market.  *See, e.g.,* D. App. 5-6.  As far as the court can determine, there are actually two distinct boards: a "make-ready" board and a "ready" board.  The court, however, refers to the two boards collectively as the "white boards" because the summary judgment briefing and record is at times unclear about which board is being discussed.  Nothing in the court's opinion depends on which board is being discussed at any given time.

- 3 -

trial. *Id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).   An issue is genuine if the evidence is such that a reasonable trier of fact could return a verdict in Hamilton's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   Hamilton's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).   Summary judgment is mandatory if Hamilton fails to meet this burden. *Little*, 37 F.3d at 1076.

III

Defendants move for summary judgment on Hamilton's race discrimination claim, contending that she cannot create a genuine issue of material fact concerning whether defendants' stated reason for terminating Hamilton is pretextual.

A

Under Title VII, it is an "unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). To prevail on her discrimination claim, Hamilton must present direct or circumstantial evidence that her race was a motivating factor for defendants' adverse employment action. *See, e.g., Siddiqui v. AutoZone W., Inc.*, 731 F.Supp.2d 639, 648 (N.D. Tex. 2010) (Fitzwater, C.J.) (addressing Title VII claims for race-based harassment, discrimination based on race, ethnicity, national origin, and religion, and retaliation) (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004)).   "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors*

*Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (age discrimination case) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)). "If an inference is required for the evidence to be probative as to [defendant's] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98.

Hamilton asserts that she has produced direct evidence of discrimination, but as the court explains below, the evidence she references is actually circumstantial. Accordingly, because Hamilton is relying on circumstantial evidence, she must establish discrimination using the "modified *McDonnell Douglas* approach." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case). As modified, *McDonnell Douglas* consists of three stages. First, Hamilton must establish a prima facie case of discrimination, which "creates a presumption that [defendants] unlawfully discriminated against [her]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Second, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for the employment action taken against Hamilton. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Defendants' burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West*, 330 F.3d at 385. Defendants' "burden requires the production of admissible evidence in support of [their] nondiscriminatory reasons." *Hervey v. Miss. Dep't of Educ.*, 404 Fed. Appx. 865, 868 (5th Cir. 2010) (per curiam) (citing *Burdine*, 450 U.S. at 255). Third, if defendants meet their production burden, Hamilton may prove intentional discrimination by proceeding under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid*, 376 F.3d at 312. Under the pretext alternative,

- 5 -

Hamilton must "offer sufficient evidence to create a genuine issue of material fact . . . that [defendants'] reason is not true, but is instead a pretext for discrimination." *Id.* (citation and internal quotation marks omitted). Under the mixed-motives alternative, Hamilton must offer sufficient evidence to create a genuine issue of material fact "that [defendants'] reason, while true, is only one of the reasons for [their] conduct, and another motivating factor is [Hamilton's] protected characteristic." *Id.* (citation and internal quotation marks omitted).

B

Defendants assume *arguendo* that Hamilton can establish a prima facie case of race discrimination. They assert that they had a legitimate, nondiscriminatory reason for terminating Hamilton's employment: that she repeatedly represented to her supervisor that units at the Waters Landing apartment complex were ready to lease when, in fact, they were not.[4] England, the person who made the decision to terminate Hamilton, testified that Hamilton's repeated failure to provide him with accurate information about the readiness of

_____

[4]Hamilton disputes whether defendants have articulated a legitimate, nondiscriminatory reason for the termination, contending that this reason does not fall within defendants' termination policy. As explained below, the court disagrees with Hamilton's interpretation of the guidelines. They do not constrain defendants' discretion to terminate at-will employees for reasons not mentioned in the termination provision, and they do not require that an employee first be warned before termination. Moreover, Hamilton's challenge relates to the *third* step, not the *second*, of the *McDonnell Douglas* framework. At the second step, defendants are merely obligated to produce evidence of a legitimate, nondiscriminatory reason. Terminating an employee based on a lack of trust that she will do her job is a legitimate, nondiscriminatory reason for discharging her. Hamilton's assertion that the reason does not comply with defendants' termination policy pertains to the third stage of the inquiry because it essentially challenges whether defendants' stated reason is pretextual.

the apartments warranted termination because "it became an issue of . . . not trusting her to do the job [of property manager]." Ds. App. 178.

To meet their burden of production, defendants have produced considerable evidence in support of this legitimate, nondiscriminatory reason. Eaton—the person who hired Hamilton and promoted her to the position of property manager, and who was her immediate supervisor before England—testified that she knew of situations where Hamilton had told her that apartments were ready to lease when, in fact, they were not. Eaton also testified that, on at least three different occasions, she warned Hamilton that if her performance did not improve, her job was in jeopardy; that she had informed the owner of the Waters Landing apartment complex that the occupancy rate of the complex was lower than it should have been;[5] and that she confronted Hamilton about the low occupancy rate, telling Hamilton that she "need[ed] to do some marketing." Ds. App. 145. Defendants have also adduced evidence that Hamilton was the only one of nine property managers who did not receive a discretionary performance-based bonus in April 2011.[6] And they have presented evidence that the problems observed while Eaton was Hamilton's supervisor continued after England assumed responsibility for supervising the Waters Landing apartment complex. In particular, England testified that, on several occasions, he visited the Waters Landing apartment

---

[5]It is undisputed that the Waters Landing apartment complex had the lowest occupancy rate of all the complexes AVPM operated during the time Hamilton was the property manager.

[6]These nine property managers were all supervised by Eaton at the time.

complex and discovered that apartments that had been listed as "ready" to lease were, in fact, not ready.  In her deposition, Hamilton admitted that this situation happened once, testifying that she showed Englard an apartment that was listed as "ready" but was not actually ready because of a problem with the carpet.  She also admitted that, on this occasion, Englard expressed his dissatisfaction with the apartment's carpet.  But she was "not sure" whether Englard told her that it was unacceptable to have an apartment listed as "ready" when, in fact, it was not.  Ds. App. 26.

## C

### 1

Because defendants have met their burden of production, Hamilton must create a genuine issue of material fact under one of the alternative methods of proof.  Hamilton attempts to show that defendants' justification is pretextual; she makes no attempt to establish that they acted with mixed motives.  The court will therefore consider her arguments under the pretext alternative.  *See, e.g., Siddiqui*, 731 F.Supp.2d at 651 (considering plaintiff's discrimination claim only under pretext alternative because plaintiff contended that defendant's stated justification for termination was pretextual and did not clearly contend that defendant had mixed motives).  To establish pretext, Hamilton must show that defendants' "proffered explanation is false or unworthy of credence." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)) (citation and internal quotation marks omitted).  At the summary judgment stage, Hamilton's burden is to raise a genuine issue of material fact regarding

pretext. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *6 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) ("Because [defendant] has satisfied its burden to produce a legitimate, nondiscriminatory reason for [plaintiff]'s discharge, in order for [plaintiff] to survive summary judgment, he must create a genuine and material fact issue regarding the ultimate question of discrimination."). And to carry this burden, Hamilton "must produce substantial evidence of pretext." *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001); *see also id.* at 403 n.3.

2

Hamilton relies on several different types of evidence in an attempt to create a genuine issue of material fact on the issue of pretext. The first type is evidence that defendants failed to document performance issues with Hamilton's work. Hamilton relies on *Laxton*, where the court noted that the defendant's failure to provide oral or written warnings before terminating the plaintiff was circumstantial evidence of pretext. *See Laxton*, 333 F.3d at 581. *Laxton*, however, is distinguishable. In that case the defendant failed to give *any* written or oral warning until the day before terminating the plaintiff, and, as a result, the plaintiff's "supervisors never gave her the chance to explain her conduct or improve it." *Id.* Here, by contrast, two different supervisors—Eaton and England—orally admonished Hamilton for misrepresenting the readiness of an apartment, and Eaton, in particular, testified that she warned Hamilton on at least three different occasions that, if her performance did not

improve, her job was in jeopardy.[7]

### 3

Hamilton next relies on a set of disciplinary guidelines, that, according to Hamilton, imply that an employee will only be terminated for a "serious violation," and she posits that her alleged failure to provide accurate information regarding the "ready" status of the apartments, even if true, does not qualify as a "serious violation." To support her argument, Hamilton relies on the following provision: "Termination: Serious violations, such as drug policy violation, sexual harassment, discrimination, possession of weapons on-site, fighting or assault, theft, destruction of company property, etc., may result in immediate separation without warning or notice." P. App. 116 (underlining omitted). Contrary to Hamilton's suggestion, the reasons mentioned in the guidelines are not exhaustive—i.e., the guidelines do not provide the *only* legitimate, nondiscriminatory reasons that defendants may invoke to justify the termination of an employee. This provision merely states that, for certain "serious

---

[7]Hamilton states in her brief that "Eaton never had any performance problems with Hamilton nor did she discuss any performance problems about Hamilton with Robert Englard before Hamilton was terminated," and she cites to two non-consecutive pages of Eaton's deposition transcript. P. Br. 3; P. App. 86, 89. Hamilton's reading of these passages is misplaced. In the first, Eaton testified that no one (e.g., residents) had complained to Eaton about Hamilton, and that Eaton had not performed any performance reviews for Hamilton. *See* P. App. 86. In the second, Eaton testified that, although she did not report a particular problem with a unit to Englard before he terminated Hamilton, she *had* confronted Hamilton about the problem. *See* P. App. 89; *see also* Ds. App. 143-45. Indeed, in the page cited by Hamilton, Eaton testified, "And I said [to Hamilton], [i]t's your responsibility as a manager to walk these units to make sure this type of thing is not happening[.]" P. App. 89. This evidence clearly establishes that, unlike the plaintiff in *Laxton*, Hamilton had been orally warned by at least one supervisor and was given the opportunity to correct her behavior before being terminated.

violations," defendants may terminate an employee "without warning or notice."  The guidelines do not rule out that defendants may terminate an employee for other reasons—serious or non-serious.  And they do not *require* that the employee first be warned before termination.  It is undisputed that Hamilton was, at all times, an at-will employee.  Consequently, defendants were free to terminate Hamilton for cause without warning or notice, and doing so does not raise an inference of discriminatory intent.  *See, e.g., Taylor v. Peerless Indus. Inc.*, 322 Fed. Appx. 355, 366-67 (5th Cir. 2009) (per curiam) (noting that, absent evidence that employer generally followed policy or that policy was applied differently to similarly-situated employees, failure to follow non-mandatory disciplinary policy did not provide any relevant information regarding whether race played role in termination).  Moreover, it is clear that although Hamilton did not receive a written warning or formal counseling, she *did* receive oral warnings about her performance from at least Eaton.  And she admitted that, on at least one occasion, Englard expressed his dissatisfaction with the readiness of an apartment unit that Hamilton was responsible for managing.

4

Hamilton also relies on her testimony that Englard commented on the race of the grounds crew shortly after replacing Eaton as her supervisor.  Hamilton argues that this comment is direct evidence of intentional discrimination, and, alternatively, that it is circumstantial evidence of intentional discrimination.  Defendants argue that Englard's comment is not direct evidence of discrimination, and that it is, at most, circumstantial evidence.  But they also maintain that it is not sufficient to create a genuine issue of material

fact that would preclude summary judgment.

To qualify as direct evidence of intentional discrimination, a remark "must be (1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue."[8] *Conaty v. Brocade Commc'n Sys., Inc.*, 2009 WL 937044, at *4 (N.D. Tex. Apr. 7, 2009) (Fitzwater, C.J.) (citing *Reilly v. TXU Corp.*, 271 Fed. Appx. 375, 379 (5th Cir. 2008) (per curiam) (internal quotation marks omitted)).  Englard's comment fails this test because, although it satisfies the first three requirements, it fails the fourth: Englard's comment was not "related to" Hamilton's termination.  Hamilton concedes that this remark was about the grounds crew of the Waters Landing apartment complex, and Hamilton was the apartment complex's property manager—not a member of the grounds crew.  Not only does the comment not refer to Hamilton or even the class of personnel of which Hamilton was a member, it does not refer to an employment decision by defendants.  There is no evidence in the summary judgment record that members of the grounds crew were subject to discriminatory employment actions.

Hamilton argues in the alternative that Englard's comment is circumstantial evidence of intentional discrimination.  To qualify as circumstantial evidence of intentional

---

[8]In *Laxton* the court noted that, in the wake of *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), the Fifth Circuit no longer applies the four-part test articulated in *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996), to circumstantial evidence.  *See Laxton*, 333 F.3d at 583 n.4.  The *Brown* test still applies to the consideration of remarks as direct evidence.  *Id.*; *see also Spears v. Patterson UTI Drilling Co.*, 337 Fed. Appx. 416, 420-21 (5th Cir. 2009) (per curiam).

discrimination, a remark must "first, demonstrate discriminatory animus and, second, be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker." *Laxton*, 333 F.3d at 583 (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000); *Sandstad*, 309 F.3d at 899). The court holds that the second requirement is satisfied because it is undisputed that Englard was responsible for terminating Hamilton. The question is whether the first requirement is satisfied. Hamilton neither presents admissible evidence about the context of the comment[9] nor cites any authority for the proposition that this type of comment is, on its face, evidence of discriminatory animus. Indeed, she states in her response brief that "Englard made the strange observation that the entire grounds crew at Waters Landing was black," P. Br. 11, but she does not explain why the "strangeness" of the observation implies that it was motivated by discriminatory animus. The comment is a factual claim about the race of members of the grounds crew, and based on the summary judgment briefing and record, the statement appears to have been true. Although the comment is patently about race, it is not necessarily evidence of discriminatory animus. The court need not decide whether it can be considered circumstantial evidence of intentional discrimination because,

---

[9]To support her contention that Englard's comment is circumstantial evidence of intentional discrimination, Hamilton cites Englard's deposition testimony, in which he denied making the comment but stated that he understood how someone might think that such a comment would evidence racial bias. *See* P. App. 103. Defendants object to this evidence on the ground that such testimony is speculation. The objection is sustained. Englard's comment about how some unnamed, hypothetical person might perceive his remark is pure speculation.

even if it is, it is insufficient to create a genuine issue of material fact that would preclude summary judgment.  It is undisputed that Englard's comment was about the grounds crew, and Hamilton was not a member of the grounds crew; there is no evidence that any of the grounds crew were subject to discriminatory employment actions; and Hamilton has failed to establish any meaningful connection between Englard's comment and her termination. It is therefore insufficient to create a genuine issue of material fact that would preclude summary judgment. *See Bissett v. Beau Rivage Resorts, Inc.*, 442 Fed. Appx. 148, 153-54 (5th Cir. 2011) (per curiam) ("[E]ven assuming that [the] statement about a different employee is somehow relevant to [plaintiff's] discharge, this piece of evidence is insufficient to create an issue of material fact under either pretext or mixed motive theories.").

5

Hamilton next argues that the evidence of inconsistent explanations offered by defendants for her termination is sufficient to raise an inference of intentional discrimination. According to Hamilton, the explanations provided by defendants are inconsistent because at first Englard offered no explanation why Hamilton was being let go, then stated that she did not keep up the white boards, then stated that Hamilton was not able to do the job of property manager, and finally stated that he did not trust her.  But the summary judgment record reveals no material inconsistency in the explanations offered by defendants.  Although the explanations differ, they are not inconsistent.   They differ only because they are characterized at different levels of generality.  According to Hamilton's testimony, when Englard initially informed her that she was being terminated, he told her she was being let

- 14 -

go because of inaccuracies on the white boards.[10]  Ds. App. 54.  Hamilton's employment status form, which was signed on June 21, 2011, states "poor job performance" as the reason for termination.  P. App. 117.  Defendants' February 16, 2012 letter to the Equal Employment Opportunity Commission states that "[Hamilton] was unable to handle the Position as Property Manager and was [t]erminated for that reason," after noting that one of the job's responsibilities was "[m]aking sure apartments are ready for [m]ove [i]n."  P. App. 118.  And during his deposition, Englard explained that he did not trust Hamilton *because of* her repeated failure to provide him with accurate information about the readiness of the apartments.  *See* Ds. App. 177-78.  Poor job performance, an inability to handle the job of property manager, and the supervisor's lack of trust are all consistent with, and indeed explained by, the more specific reason that Hamilton repeatedly represented to her supervisors that apartments were ready to lease when, in fact, they were not.  Thus the court discerns no basis in the record to conclude that defendants' explanations are materially

---

[10]Hamilton's deposition transcript states:

> [Counsel]:   Okay.  So now you think that when Mr. Englard told you you were being let go he said it was due to inaccuracies on the board in reference to make-readies?
>
> [Hamilton]:   Yeah, I guess, yes.

Ds. App. 54.  In her brief, Hamilton denies that there were inaccuracies on the white boards. But for purposes of determining the *consistency* of defendants' explanations, whether Englard's statement was true is irrelevant.  What matters is that he said it when he initially informed Hamilton of her termination, and that defendants' explanations did not materially change over time.

inconsistent.

6

Finally, Hamilton relies on her testimony that Eaton told her that race may have played a role in the decision to terminate her. But this evidence is inadmissible. The only evidence she presents is from Hamilton's deposition, in which she testified that Eaton called her after she was terminated and told her that she thought the termination was discriminatory. *See* P. App. 50-52. Defendants object to this evidence on, *inter alia*, the grounds that it is hearsay and speculation. The court sustains both objections.

Whether the statement is hearsay depends on Hamilton's purpose in offering the testimony.[11] It is clearly hearsay if she is offering the testimony to prove the truth of Eaton's assertion—that race did, in fact, play a role in the decision to terminate Hamilton or that her termination was discriminatory. *See* Fed. R. Evid. 801(c). She could in theory argue that she is offering the testimony simply to prove that Hamilton made the statement, but in that case, the testimony would be hardly probative, if at all. The mere fact that Hamilton made the statement does not tend to establish that race played a role in the decision to terminate Hamilton or that the termination was discriminatory. Therefore, in order to be relevant, Hamilton must offer the testimony to prove the truth of the matter asserted—that race played a role in the decision to terminate her, in which case it is hearsay. Alternatively, if it is relevant and not hearsay, it is speculation. Eaton testified—and Hamilton concedes—that

_____

[11]Defendants raise their objections in their reply brief. Hamilton did not request leave to file a surreply or otherwise respond to the objections.

she had no role in the decision to terminate Hamilton.  Hamilton does not explain how Eaton came to this belief, and she does not support the assertion in any other way.  Because Eaton was not involved in the decision to terminate her, her statement, assuming that she made it, is pure speculation.[12]  "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)) (internal quotation marks omitted).

D

In sum, Hamilton has not presented evidence that would permit a reasonable trier of fact to find that defendants' legitimate, nondiscriminatory reason is pretextual.  Even viewing the evidence in the light most favorable to Hamilton and drawing all reasonable inferences in her favor, there is abundant and uncontroverted evidence that no discrimination occurred. *See Smith v. Hewlett-Packard Co.*, 512 F.Supp.2d 587, 601-02 (N.D. Tex. 2007) (Fitzwater, J.) (noting that summary judgment is appropriate where there is a "weak issue of fact" and "abundant and uncontroverted evidence that no discrimination occurred").  Hamilton admitted that, on at least one occasion, she showed England an apartment that was listed as

_____

[12]Hamilton relies on *Hansard v. Pepsi-Cola Metropolitan Bottling Co.*, 865 F.2d 1461, 1466-67 (5th Cir. 1989), for the proposition that a coworker can offer an opinion regarding whether an employee's termination was motivated by the employee's protected status.  But that principle is inapposite here, where Hamilton cites *her* statement—not Eaton's.  The Fifth Circuit recognized this distinction in *Hansard* when it distinguished *Mitroff v. Xomox Corp.*, 797 F.2d 271, 275-76 (6th Cir. 1986).  *See Hansard*, 865 F.2d at 1467 ("But, in this case, Miller's testimony was based on his own experience in the corporation, not a hearsay statement by a third party.").

"ready" but was not actually ready to lease.  Eaton, the person who hired and promoted Hamilton to the position of property manager, testified that her performance was inadequate and that she warned Hamilton on at least three occasions that her job was in jeopardy if her performance did not improve.  Hamilton was the only one of nine managers whom Eaton did not recommend for a discretionary performance-based bonus in April 2011—fewer than three months before she was terminated.  Hamilton does not allege that Eaton acted based on discriminatory animus; in fact, she attempts to use in her favor statements that she attributes to Eaton.  And it is undisputed that, during the time Hamilton managed the Waters Landing apartment complex, the property's occupancy rate was the lowest of the apartment complexes operated by AVPM.  Assuming *arguendo* that Englard's comment about the race of the grounds crew can be considered circumstantial evidence of discriminatory animus, it is weak evidence, and Hamilton has failed to show any meaningful connection between that comment and the decision to terminate her.  Thus the court concludes that Hamilton has failed to adduce evidence that would permit a reasonable trier of fact to find that defendants' legitimate, nondiscriminatory reason is pretextual.  Accordingly, defendants are entitled to summary judgment dismissing Hamilton's race discrimination claim.

IV

Defendants move for summary judgment on Hamilton's age discrimination claim, contending that Hamilton cannot create a genuine issue of material fact establishing that defendants' stated reason for terminating Hamilton is pretextual.

A

It is unlawful under the ADEA "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).  To prove age discrimination, Hamilton can rely on direct or circumstantial evidence.  *See, e.g., Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) ("We have traditionally bifurcated ADEA cases into distinct groups: those in which the plaintiff relies upon direct evidence to establish his case of age discrimination, and those in which the plaintiff relies upon purely circumstantial evidence."). Like she does with her race discrimination claim, Hamilton relies on circumstantial evidence to prove age discrimination.  The Fifth Circuit continues to analyze age discrimination claims based on circumstantial evidence under the *McDonnell Douglas* framework.  *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).  But, unlike race discrimination claims, age discrimination claims require that Hamilton prove that age was the "but for" cause of her termination; in other words, she may not proceed under the mixed-motives theory.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009); *see also Reed v. Neopost USA, Inc.*, 701 F.3d 434, 440 (5th Cir. 2012).

B

Defendants assume *arguendo* that Hamilton can establish a prima facie case of age discrimination, and they assert the same legitimate, nondiscriminatory reason for their termination of Hamilton  In her attempt to establish pretext, Hamilton relies on substantially similar evidence as she does for her race discrimination claim—namely, that defendants failed to document performance deficiencies or impose lesser disciplinary sanctions before

terminating her and that defendants offered inconsistent explanations for her termination. In addition to this evidence, Hamilton presents evidence that Eaton told Hamilton that she may have been terminated because of her age, that Eaton told her that the company may have made a mistake and was going to offer Hamilton her job back,  and that England was more than 20 years younger than Hamilton.

For the reasons already explained, defendants' failure to document performance issues or impose lesser disciplinary sanctions before terminating Hamilton does not create a genuine issue of material fact concerning pretext.  And, as previously explained, there are no material inconsistencies in the explanations offered by the defendants for their decision to terminate Hamilton.

The court now turns to the only unique pieces of evidence on which Hamilton relies to establish pretext as to her age discrimination claim.  Defendants object to Hamilton's testimony that Eaton told her that she may have been terminated because of her age on, *inter alia*, the grounds that it is hearsay and speculation.  For the reasons explained above, the court sustains both objections.  In order to be relevant, Hamilton must offer the testimony to prove that age played a role in the decision to terminate her or that her termination was discriminatory, in which case it is hearsay.  Alternatively, even if it is relevant and not hearsay, it is speculation because Eaton was not involved in the decision to terminate Hamilton.

Defendants also object to Hamilton's testimony that Eaton told her that the company may have made a mistake and was going to offer Hamilton her job back on, *inter alia*, the

grounds that it is hearsay and lacks foundation.  The court sustains both objections.  The statement is hearsay, and it lacks foundation because Hamilton does not present any context for Eaton's statement.

Finally, the fact that England was more than 20 years younger than Hamilton does not create a genuine issue of material fact concerning pretext because it does not alone, or in combination with the other admissible evidence, provide any basis to infer discriminatory intent.

Hamilton has failed to adduce evidence that would permit a reasonable trier of fact to find that defendants' legitimate, nondiscriminatory reason is pretextual.  Accordingly, defendants are entitled to summary judgment dismissing Hamilton's age discrimination claim.

\* \* \*

For the reasons explained, the court grants defendants' motion for summary judgment and dismisses this action with prejudice by judgment filed today.

**SO ORDERED.**

March 27, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE

- 21 -